Welcome to sunny but dry Minnesota, again. Could be worse. Please announce the cases for argument this morning. The following cases are scheduled for argument this morning, Tuesday, June 13th. No. 1, 22-2769 from the District of Minnesota, James Prisk v. Travelers Indemnity Co. of America. No. 2, 22-3621, Mongong Den v. Merrick B. Garland. No. 3, 22-2912 from the District of Minnesota, United States v. Rommel Smith. No. 4, 22-3306 from the District of Minnesota, United States ex-rel Kenneth Kramer, et al. v. United Dairies, et al. In addition, the following case is submitted on the briefs and record without oral argument. No. 5, 22-3196 from the District of Minnesota, United States v. Terrell Rolford. Please call the first case. The first case for argument is James Prisk v. Travelers Indemnity Co. of America. Thank you, Mr. Smith. Check it. Thank you, Your Honor. Good morning, Your Honors. Counsel may please the Court. I'm Chuck Spivak, and I'm appearing today on behalf of Appellant Travelers Indemnity Co. of America. Your Honors, I'd like to start with three things that are undisputed. First, Mr. Prisk's claims against the City of Hermantown are subject to the $500,000 statutory liability cap set forth in Minnesota Statute 46604, assuming the City did not purchase insurance for its 46604 liability in an amount in excess of that cap. That isn't before us, that issue. Isn't this a declaratory judgment action? It's a declaratory judgment action, Your Honor. But to determine whether the cap applies requires a determination of this declaratory judgment action as to whether there's insurance in excess of the cap. And so I agree. There's no question that his claim is subject to the cap. But if you get to the merits of the claim, then you decide whether the cap applies. Your Honor, the — in fact, we believe the opposite is true. You first have to determine what the City's potential liability is before you go ahead and try the case, because in that situation, then, the possibility exists of a jury returning a verdict with the commensurate publicity attended to it without a determination of whether that verdict is collectible in one penny more than the statutory cap. And that was the legislature's intent in enforcing the cap, so the City both wouldn't face exposure in excess of it and, second, wouldn't face the risk of having verdicts entered against it in excess of the cap. The second thing that's undisputed, Your Honor, is that it's undisputed that the City's insurance policy with Travelers' Indemnity Company very clearly, by endorsement, limit the exposure, limit the coverage for exposures under 46604 to $500,000. And, Your Honor, I brought a little visual aid, not for the purposes of having the Court try to read the small print, but for the overall purpose of illustrating that this is not a small print buried exception to otherwise purchased higher limits of liability. This is a Minnesota-specific endorsement, specifically referencing the Minnesota statute at issue, 46604, and specifically indicating that the limits of liability set forth in the declarations of the policy are different with regard to 46604 exposure. The small print that I'm not asking the Court to read but I'll recite specifically says, the Minnesota each claimant limits statutory cap of $500,000, quote, is the most we will pay for the combined total of all damages because of bodily injury. You can say it's undisputed, but whether there's – whether this is – covers this claim within the meaning of .06 and what coverage means in that rather ambiguous statute is the heart of the dispute. I agree, Your Honor. I'm simply giving the predicate to these three simple predicate facts. You're giving your client's view of its policy. Well, Your Honor, my client's view of the policy is the unambiguous language of the policy. The question, and you're right, is whether 46606 reads this language out of the policy. And the key to that under Minnesota law is the third undisputed point. That's – all right. I don't agree with your statement of the issue. All right. So, Judge Licker, let me try to rephrase it in a way that I think is clear from the district court's order as to what the issue is. Quoting from the district court's order denying travelers' request for Rule 59e relief, the district court said that it, quote, did not assume that Hermantown expended public funds for the purchase of liability insurance in excess of the municipal court cap. That means this is what the issue is before this court. Did the district court err as a matter of law by saying that section 46606 prohibits travelers and the city from enforcing this unambiguous policy language because it is contained in the same policy that provides higher limits for the city's exposure that's not subject to the cap? And, Your Honor, the answer to that question is definitely yes. That is an error in terms of the district court's holding. Well, I would say the court erred in saying that travelers waived the claim for Hermantown because that ignores the contractual nature of the policy. But I still think the statute – I mean, the Minnesota legislature could say, you can't do this. And the question is, did they? And they did not, Your Honor. Section 466 of the Minnesota statutes and every bit of case law that interprets this has nothing in it that says this. There's nothing in that statute and nothing in the case law that prohibits a municipality from insuring itself against the capped exposure it faces under 46604. You're saying then that the – I mean, Fraser obviously read the statute different than what you're arguing. I take it your argument then – and let's get down to that – is the statement in Fraser that coverage is undisputed. So – Otherwise, it's hard to see the difference between a non-waiver provision and a non-coverage provision. Your Honor, I think the distinction is clear, and Fraser really has no applicability here because – He's not. Because Fraser didn't deal with the question of whether an insurer, and it's insured, could contract for separate and distinct coverage for different types of liabilities, which is precisely what travelers in the city did here. This endorsement creates a separate and distinct policy limits for claims – It's a difference in policy language, but the intent of the parties, I suspect, was quite similar. The difference in policy language is absolutely controlling in terms of distinguishing Fraser from this case. Compare what I just – Okay. Anything other than your argument supporting that? Any case law supporting that? This is one of these situations – We can go back to Reimer. Yeah. And I think we are required to interpret three inconsistent District of Minnesota decisions. Yeah. So that's fair game. But anything post-Fraser that seizes upon the distinction you're saying is crucial. So, Your Honor, there are no Minnesota decisions which have interpreted this specific traveler's language and this specific endorsement. If there were, they would have been the first thing that's in the brief. The lack of those decisions doesn't mean that Fraser is controlling. If Fraser deals with different policy language – Fraser's policy language said this. Nothing contained in this policy shall be deemed to be a waiver of any statutory immunity or limitation of liability available to an insured. We do not waive our right to deny liability by reason of such immunity or limitation. Rather, this is a liability limitation. It's a statement saying that even though the Fraser insured bought more insurance, we don't waive our ability to assert the statutory cap liability as a limitation on liability. Compare that to the traveler's language, which modifies the limits of insurance in the declaration to $500,000 for any claim by any person for any bodily injury or property damage falling under 46604 or any amendment to that statute. And so it certainly is within the purview of this Court to look at 46606, which in no way prohibits a municipality from insuring itself against the capped exposure it faces under 46604 in an amount equal to the cap, in no way says that a municipality can't insure itself against exposure it may face that is not capped in whatever amount that it wants, and in no way says you can't do so in the same way that a municipality can't do so in a capped exposure. So the question is, what is the liability insurance policy so long as the municipality doesn't extend public funds to purchase liability insurance for capped exposures in amounts in excess of the capped amount, which clearly did not happen here as Judge Wright acknowledged in her order denying Rule 59e relief. In denying Rule 59e relief, Judge Wright very, very clearly said she did not assume that Hermantown extended public funds for the purposes of liability insurance in excess of the municipal court cap. So now what's incumbent upon this Court is, does Frazier in any way amend that clear language of 46606 in light of the policy language in the Traveler's Policy, which is quite different than the Frazier language? The Frazier language isn't a limit of limitation on what the policy limits are for a certain type of risk. It's a non-waiver of the ability of both the city and the insurer in Frazier from asserting a liability defense, in this case the statutory cap. The district court in this case said these things wrong. What the district court ruled that was incorrect was that if you're going to have an insurance policy that very specifically says there's a different limit of liability for capped exposure, and in that same insurance policy, the municipality makes the judgment to buy insurance in excess of the capped amount for liabilities that aren't subject to the cap, that limitation on insurance for capped exposures is unenforceable even if it was never paid for. Your Honor, this — Go ahead. Now, is Frazier rightly decided? I don't think so, Your Honor. But I think the issue before us is not necessarily whether Frazier is decided, but whether this language justifies the district court's opinion. But I'd be happy for this Court to say that Frazier made a mistake, too, because there's nothing in 466.06, again, that says that a municipality can't buy insurance up to the cap for capped exposure, that it can't buy insurance for uncapped exposure in whatever amount that it wants, that it can't do it in the same policy, but that by doing so, it somehow waives its ability to rely on the cap. Frazier did that. Let's get to the reasoning in Frazier. Forget about it. This case doesn't turn on a dictionary analysis. The Court said 466.04 liability limits protect the fiscal integrity and financial stability of local governments. If a municipality obtains insurance that protects against tort liability, the statutory caps become unnecessary. The interest of protecting taxpayers from a large damages award and properly compensating the victims, the victim are incongruous. Procuring insurance rather than relying on the caps is a means to appease both interests. And they hark back to the Supreme Court's Minnesota's decision in 1963, echoing some of the same economic view of the world. Your Honor? What's your response to that? Predicate answer first. That Minnesota Supreme Court decision from the 1960s clearly involved a situation where — I didn't say it wasn't distinguishable. It's got language that, if you take the district court's view of this issue, plugs in nicely. It's important to note, Your Honor, that prior to Frazier, no case had invalidated a limitation on insurance that did not involve a commensurate payment for the premium in excess of the insurance and the public policy determination that you shouldn't be able to avoid providing covers that you paid for by hiding behind the statutory cap. And as to the public policy reasons as to why Frazier — I'm not saying Frazier involved payment for the policy limits. I'm saying prior to Frazier, there's not a single case that involved an invalidation of the insurance provision that didn't involve proof that the extra policy limits were paid for. Frazier's the first one.      Frazier's the fifth one. Frazier's the sixth one. I'm talking about the Supreme Court case that you talked about that's showing. That didn't have anything to do with this statute. You know, if you look at the history of the Minnesota Supreme Court and how they view insurance, right, they seem to care very little about the underwriting risks that insurance companies have undertaken. And they seem to be quite consumer-friendly. And what we've got here is a statute that is kind of trying to balance that risk to the city and the protection of the public, right, both ways, the individual who's been hurt and the public writ large in the city. And, you know, we're supposed to apply a Minnesota law. And doesn't it seem likely the Minnesota Supreme Court would look at this and say, yeah, you know, coverage should be to the full 2 million? I would hope not, Your Honor, because that would be contrary to the legislative's intent in enacting 46604. Let me close with — We don't have legislative history. Let me close — Minnesota, right? Yeah. All right. So you're telling us what the legislature intended from your view of the plain language of the statute, right? I'm assuming that that's what we all do, Your Honor. Oh. The legislature intended that municipal exposure should be capped at $500,000 for certain types of risk. The legislature then said in 46606, you can insure yourself for that if you want to. It never said that if you insure yourself for other risks in excess of the cap, that you've waived your ability to rely on the cap. This is not a case in which Travelers is attempting to withhold a benefit from PRISC that the city paid to procure. I heard it clear as they were in the self-insurance statute in — on the point you're arguing. In self-insurance cases, we wouldn't even be here on the issue that's before us right now. The municipality would simply be coming in and say, we self-insured ourselves with a cap, and we have no exposure in excess of the cap. This is not a case where Travelers is attempting to withhold a benefit for PRISC that the city paid to procure. And contrary to the district court's characterization, and with respect, Judge Erickson, to your statement, this is not a situation where we're balancing the private interest of an insurance company. Rather, the balancing here involves two interests, that of the injured tort victim and that of the municipality spending public funds to procure insurance. But you mean that what is not at issue is whether your client is going to have to pay for a risk that it didn't insure? That's the whole basis of any decision that's been reported by the Minnesota courts for allowing insurance to eviscerate the cap. The Minnesota courts don't care about underwriting, but I do. Well, Your Honor, in this case. You can't ignore underwriting in these kinds of issues, in my view. I wish that you would do nothing but look at underwriting, because this language unambiguously says that the limits of insurance contained in the declarations are modified for 46604 cases. So that language pretty clearly says your client didn't collect a premium for the million and a half that's at issue. And Judge Wright agreed. She didn't base her decision on any belief that a premium was collected. Based it on compensating an injured plaintiff. And in this case, Your Honor, and I'm burning into my rebuttal, but I think this is important. In this case, Your Honor, the Minnesota legislature's balancing the interest is this. It has already balanced the interest between the municipality and the tort victim by enacting liability caps that reflect this balancing. This isn't a situation where Travelers is attempting to withhold a benefit for Pris that the city paid to procure. Enforcing liability caps is not a gift to the insurance company. It's a reaffirmation of the scope of risks that the Minnesota legislature determined a municipality may be exposed to. The district court's order effectively eviscerates this legislative balancing of risks by requiring a public entity to waive protection of the liability caps if it wants to be insured against uncapped exposures at a higher limit. And that's exactly what the district court did here. And that is exactly not justified by 46606. And it is contrary to law. The city of Hermantown cannot be held liable to Mr. Pris for any amounts in excess of the legislatively mandated cap, and a declaratory judgment should be so entered confirming that the limits of Travelers' coverage and of the city's liability is set at the statutory cap as a matter of law. Thank you. Thank you. Mr. Malpatine. Good morning, Your Honors. May it please the court, counsel, Jeffrey Malpatine. I represent the appellee, James Prisk. Your Honor, Judge Loken, you hit the nail on the head right away. The only issue that's present before this court is how 46606 meshes with the Travelers' policy. Before I answer that question, though, I want to clarify a couple of things because they did come up. Hermantown has no risk here. This case does not involve Hermantown. It has nothing to do with Hermantown. And to suggest that it does is misleading. This case involves Travelers' and Mr. Prisk. It has future risk. They don't have any risk, ever. They have a future risk from this decision. They don't. They will either pay more premiums in the future or they will not be given any insurance above the statutory cap. There's no evidence of that in this case, Your Honor. Not one. I mean, I can't say what would happen. I'm speaking from the real world. I can't. The one who's represented, you know. I'm not an insurance salesperson. I have no idea what would happen. No, I'm talking about the way underwriting works. There is, I understand underwriting, and that's very correct. Travelers assumed the risk as a private carrier when it wrote this policy for Hermantown. Travelers had a choice to make. They could have said, No, we are not going to write this policy because MnSTAT 466.06 says we can't reduce and enjoy the benefit of the caps. That's a separate statutory framework, and I'll get to that in a minute, Your Honor. But there's nothing in this case about premiums being paid. There's nothing in this case about the party's intentions. There's nothing in this case about a bargain for a contract. None of that is before the court. This case was submitted on stipulated facts. There's no affidavits. There's no testimony. There's nobody from Hermantown who says we're at risk. The stipulated facts were pure and simple, the policy. And when counsel comes up here and says, This endorsement is not buried, it's buried on some page of 34 of the policy, in an appellate's appendix. It's not front and center. What we have is a fairly plain and clear provision if you just look at how insurance policies are generally constructed. You cannot, with a straight face, that this was in some manner hidden or attempted to be buried in the policy where it couldn't be found. And this is a sophisticated buyer of insurance, too. I mean, it's not. Correct. Correct. But it's a non-issue here. It doesn't make any difference. And much to your point, Judge Erickson, it's just a non-issue. There are sophisticated people. They read these policies. They look at them. But it's a non-issue in this case. It has nothing to do with 466.06. And the question becomes, you know, under 466.06, what can they do? And counsel wants to sort of separate them and say, well, the waiver was different in Fraser and, you know, make some eloquent argument that just doesn't hold water because. . . Wait a minute. That makes all kinds of sense. This policy is a coverage issue. Coverage wasn't an issue in Fraser. A hundred percent. All right. So why is it immutable from the language of the statute? Because the non-waiver provision. . . The non-waiver and the endorsement are the same. It's form over function. They're not the same. They are the same because it's form over function. Well, there's a difference between a waiver and just not coverage, isn't there? Correct. Your 466.06 contains no caveats, exceptions, or other limitations. In other words, it doesn't say non-waiver provisions are acceptable. Meanwhile, endorsements aren't. What about the argument that we wouldn't be having any discussion here if they had just written two separate policies? There's certainly that possibility, Your Honor. But I don't know how that would look, and I don't know that it's really germane to the question here. Well, isn't that putting form over substance, that if you write two separate categories of coverage into the policy, one specifically addressing the 466 caps, you know, if you'd say, well, it's a different thing if you have two separate policies, I mean, can't you write two separate types of coverage into a business comprehensive business policy? In fact, isn't that happening here? Because they've got, you know, policies that talk about general liability. They talk about things unrelated to automobiles in this policy. It is clearly not two separate policies, Your Honor. It is one policy. It's read together. And as counsel at oral argument stated in front of Judge Wright, this is Doc 49, the policy, there's no dispute here today about what the policy says. The policy has a 2 million limit on the deck page, and the policy has an endorsement that clearly and unambiguously reduces. Isn't that what endorsements do? They modify, and then they can modify coverage? They can, and this is not a boldface attack on endorsements. This is 466.06, does not permit this endorsement. And we don't we can't overlook the Casper decision. Judge Klapach, I mean, it's illustrative of exactly what the Court is asking me. And there, Judge Klapach says, the mere act of procuring insurance in excess of the statutory caps constitutes a waiver. That was Judge Klapach in Casper. And also, Judge Klapach was presiding in the Ellsworth decision, which, you know, deals with a little bit different issue on valid and collectible. Any attempt by a private insurer to preserve its insured municipality's statutory caps for its own benefit is clearly not contemplated by the language of the statute. So back to the two-policy question, your answer is if there were two separate policies, then the cap would apply? No, Your Honor. I mean, that's a hypothetical that I'd have to see analyzed and, you know. It's important to me. I thought maybe you could suggest an answer. My suggestion is it doesn't change anything by having two policies. It doesn't change anything. So if there are two policies, one insuring for $2 million for risks outside the statutory cap type and a separate policy insuring for $500,000, then that second policy waves above the $500,000? I still think. Is that what your answer is? No. Under Casper, under Reamer, under Frazier, I still think there's an issue and an exposure to the private carrier. Again, private carrier. There's a difference between the two. For a private carrier to say your limit is $2 million, not $500,000. That's what the Casper court concluded. How does that translate to the two policy scenario? That if they insure for $500,000, then they're liable over the $500,000 or not? Insure $500,000 for what? For motor vehicle accidents just in Minnesota? So they have a separate Minnesota policy and then a policy that says anything outside of Minnesota or if it's a civil rights claim or if it's some sort of statute where it trumps these caps? Right. Like I say, Your Honor, it's a hypothetical question. I truthfully can't answer because I'd have to see it. Okay. I was just trying to understand why we would say that the district court was right here if we would say in the two policy scenario that the second policy does not wave. It's a great question, but it's a hypothetical that sort of begs, you need to see it in order to understand it and read it. But, I mean, I do think it's a great question because if this accident had happened in Wisconsin, the coverage is $2 million. Why? Because that's the limit. If this accident had happened in Kentucky, what's the coverage? It's $2 million. Why? Because the endorsement doesn't apply. The endorsement only kicks in here because this occurred in Minnesota. And then we have to balance that much to what Judge Loken just nailed right from the go is how does 46606 interface with this policy? And if we look at the trio of cases that exist before we get here today, it's Casper, it's Frazier, and it's Reamer. Okay? Casper is unequivocal. Insurance and excess of the statute. In your view, what is the meaning of the words, covers the claim in 466.06? Yeah, covers the claim. There is no dispute here that traveler's policy covers this claim. There is no dispute. Traveler's. There's a dispute. That's what we're talking about.  Both of you are just. No, let me clarify. We're not listening to. We're not getting down to what's really the problem here. No. On either side. We are. There's a difference between coverage and limits, Judge Loken. You asked me about covers, the claim. This policy covers the claim 100%. There is no dispute. What is in dispute is what is the available policy limit, 500,000 or 2 million? That's exactly what is going on here. And when we think about the trio of cases, the clarity becomes, it becomes more clear. Reamer, which was a, you know, district court case, Minnesota District Court, Federal District Court, and Casper. Yeah, that was wrong. But I'll talk about it in passing. Yeah. Reamer takes a different framework. They apply a completely different statute because it is not a private carrier. Private carriers are treated differently, and as Your Honor noted, for all the public policy reasons and compensating victims, insurance pools under 471.981 don't have this issue. The legislature put a fork in the road, and that fork in the road is when a municipality buys insurance, they can go to an insurance pool like the Minnesota County Insurance Trust, and they can say these people are going to funnel down 471.981. There is no exposure. Even if you buy 10 or 50 or $100 million, the cap is still preserved. What about this? The language in 466.06 itself says that the purchase of, the procurement of insurance waives the limits of governmental liability only to the extent that valid and collectible insurance is in place. And valid and collectible would have to be defined by the policy as opposed to by the statute, right? And if we look at this policy, doesn't it look like the valid and collectible insurance in force is limited to, you know, $1.5 million for the incident, $500,000 per individual claimant? No. Why not? No, because those questions were answered in the Ellsworth opinion. Those questions were answered in Perkoff-Meadow, which is a Minnesota Supreme Court case. And, you know, those cases dissect the very question, Judge Erickson, that you're asking. Here there is valid and collectible insurance that covers PRISC's claim. The policy is a valid policy. It's collectible. Travelers has the money. And if you read the Ellsworth case, what the Ellsworth case really says is essentially, hey, you blew the cap. You're not entitled to the cap. But there's this secondary policy. And we're wondering if this secondary policy is considered in illustrating whether or not you blew the cap. Okay? Ellsworth is supportive of the general proposition that 466.06 says, if you bought more, you're stuck with giving them more. But it concluded that this secondary policy that had nothing to do with the school was not a valid and collectible policy. The Perkoff-Meadow case concluded differently because there the carrier was bankrupt, Your Honor. And so the court concluded because the carrier is bankrupt, there's no insurance. It's not available, and it's not collectible. There are two cases that illustrate exactly what you just asked me, Judge Erickson, and they are supportive of the appellee's position here, which is this is a valid and collectible policy. It's a valid policy. Travelers has the money. They wrote a policy for $2 million, and they can't reduce it. Even as their counsel said at oral argument, the endorsement reduces the coverage. Travelers didn't reduce it. Travelers and Hermantown reduced it. Hermantown didn't write the policy, and Travelers didn't write the policy. Hermantown agreed to the policy. Give me a Minnesota contract case that says if only the party that drafted the contract is bound by it or agreed to it. The party should have read 466.06 when they entered into the agreement, Your Honor. That's what should have happened because then they never would have done it because the law doesn't allow it. Minnesota legislature has been clear on that. CASPER is clear on that. I would ask that. When was the first effective date of the policy? First effective date of the policy? I can't remember. It was in 2020, Your Honor. I'm sorry, I don't have it directly in front of me. It was a one-year policy. Was the same policy in effect when Fraser was decided? That I don't know. Again, the only thing that was submitted to the court on stipulated facts was the policy at issue here. We didn't look at prior policies. We didn't look at any extemporaneous evidence. That was submitted by agreement of the parties, and rightfully so, because the only question, as you nailed it. But you asserted that the party screwed up because they didn't know the law as established in Fraser. And that ain't Mr. Prist's problem. Your Honor, Judge Wright's order of July 18th of 2022 got it right, unquestionably. She further solidified that with her Rule 59e motion ruling. How can you say unquestionably when we've been arguing now for quite a while about whether it is questionable? You're saying it's a frivolous appeal? No, I'm not saying it's a frivolous appeal. Well, then what would be the words like unquestionably? She got it right, Your Honor. Okay, that's appropriate. Thank you for the time. Thank you. Counsel, the case has been thoroughly briefed and argued. And time is up, and I think we understand the issues. We'll take it under advisement. Thank you, Your Honor.